

"UNDER SEAL"

FILED
CHARLOTTE, NC

SEP 17 2020

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>)<br>ERIC M. HILL )<br>_____ ) | DOCKET NO. 3:20cr331-KDB<br><br>**BILL OF INDICTMENT**<br><br>Violations:<br>15 U.S.C. § 78j(b)<br>18 U.S.C. § 1348 |

THE GRAND JURY CHARGES:

At all times relevant to the Indictment:

### Introduction

1. In October 2015, the defendant, ERIC M. HILL, a resident of Charlotte, North Carolina, participated in a fraudulent scheme by conducting securities transactions on the basis of material, nonpublic information (Inside Information) pertaining to a proposed acquisition of Piedmont Natural Gas Company, Inc. (Piedmont) by Duke Energy Corporation (Duke Energy). HILL obtained the Inside Information from an employee of a consulting firm, which provided actuarial services to Piedmont, who disclosed Inside Information to HILL in confidence based upon their friendship and history of sharing confidences. Through the scheme, HILL realized proceeds of more than $380,000.

### Relevant Persons and Entities

2. Piedmont was an energy services company headquartered in North Carolina whose principal business was the distribution of natural gas. Piedmont was a public company whose stock traded on the New York Stock Exchange, a national securities exchange, under the ticker symbol "PNY." Piedmont was acquired by Duke Energy on or about October 3, 2016.

3. Piedmont stock was registered with the United States Securities and Exchange Commission (SEC) pursuant to Section 12(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78l.

4. Call options were derivative financial instruments that offered the holder the opportunity to buy the underlying stock at a set price (the Strike Price) on or before a specific exercise date in the future. Call options were considered "out of the money" when the Strike Price of the option was more than the current price of the referenced stock. Call options were available in connection with Piedmont stock.

5. Piedmont stock and Piedmont call options were securities, as that term is defined in Title 15, United States Code, Section 78c(a)(10).

1

6. Firm 1 is a consulting firm with offices in Charlotte, North Carolina, which, among other things, provided actuarial consulting services regarding health and benefits and retirement plans.

7. Insider, a resident of Charlotte, North Carolina, was employed in various positions at Firm 1, including ultimately as a Principal, from about 1999 to May 2018.

8. HILL was a close personal friend of Insider and also had been employed by Firm 1 from approximately August 2000 to April 2005.

## The Insider Trading Scheme

9. While employed by Firm 1, Insider provided actuarial services for certain of Firm 1's clients regarding their retirement and pension plans. From approximately 2010 through at least October 2015, Insider provided actuarial services to Piedmont regarding its pension plans.

10. As a Principal of Firm 1, Insider was subject to Firm 1's policies, including its Code of Professional Conduct and insider trading policy, which provided, among other things, that employees were prohibited from communicating with others regarding material nonpublic information about a client and from tipping others to trade securities based on material nonpublic information.

11. HILL was aware that Insider, based on his employment and responsibilities, was privy to confidential client information and that Insider had a duty of trust and confidence to Firm 1, its clients, and the clients' shareholders.

12. Insider had a history, pattern, and practice of sharing confidences with HILL and expected such confidences to remain confidential, and HILL owed Insider a duty of trust and confidence.

13. By no later than October 13, 2015, Piedmont and Duke Energy were in confidential, non-public discussions about a potential acquisition of Piedmont by Duke Energy. Information relating to this potential acquisition, including the existence of the discussions, was material, non-public, and confidential.

14. On the morning of October 13, 2015, in connection with his employment and responsibilities at Firm 1, Insider had a confidential telephone call with two Piedmont employees with knowledge of the potential acquisition. During that call, Insider obtained Inside Information concerning Piedmont. Insider had a duty of trust and confidence regarding the Inside Information.

15. Later that morning, Insider participated in a telephone conversation with HILL in which Insider conveyed some or all of the Inside Information to HILL pursuant to HILL's relationship of trust and confidence with Insider. HILL knew that this information was confidential and that Insider obtained it pursuant to his duty of trust and confidence to Firm 1, Piedmont, and Piedmont's shareholders.

16. Minutes after the call with Insider ended, HILL misappropriated Inside Information from Insider when HILL purchased out-of-the-money Piedmont call options while in possession of Inside Information.

2

17.     HILL purchased additional out-of-the-money Piedmont call options later on October 13, 2015. Collectively, the Piedmont call options HILL purchased constituted nearly all of those types of Piedmont call options cleared on October 13, 2015. HILL purchased additional out-of-the-money Piedmont call options and Piedmont stock on October 15, 2015, and he purchased additional out-of-the-money Piedmont call options on October 20, 2015.

18.     News that the boards of directors of Piedmont and Duke Energy approved the acquisition was publicly disclosed on October 26, 2015. The price of Piedmont stock increased significantly after the news was disclosed. Later that day, HILL sold all of the securities in Piedmont that he had previously purchased, resulting in total proceeds of at least $381,185.00.

## COUNT ONE
15 U.S.C. §§ 78j and 78ff
(Fraud in Connection With the Purchase and Sale of Securities)

19.     The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 18 of the Bill of Indictment, and further alleges that:

20.     Between October 13, 2015 and October 26, 2015, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendant,

### ERIC M. HILL

willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulation, Section 240.10b-5 by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would and did operate as a fraud and deceit upon any person, *to wit*, by purchasing securities of Piedmont Natural Gas Company, Inc. while in possession of material, non-public information about that company that HILL obtained from his friend, Insider.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b-5-1, and Title 18, United States Code, Section 2.

3

Case 3:20-cr-00331-KDB-DCK   Document 3   Filed 09/17/20   Page 3 of 5

# COUNTS TWO THROUGH SEVEN
## 18 U.S.C. § 1348
### (Securities Fraud)

21. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 18 of the Bill of Indictment, and further alleges that:

22. On the dates specified below, in Mecklenburg County, within the Western District of North Carolina, the defendant,

## ERIC M. HILL

knowingly and intentionally executed and attempted to execute a scheme and artifice (1) to defraud any person in connection with securities of Piedmont Natural Gas Company, Inc., an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l), and (2) to obtain money and property by means of materially false or fraudulent pretenses in connection with the purchase or sale of securities of Piedmont Natural Gas Company, Inc., an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l); *to wit*, HILL used material, non-public information obtained in a breach of duty of trust and confidence owed to Insider to transact in securities of Piedmont Natural Gas Company, Inc. as set forth below, each transaction constituting a separate count:

| COUNT | DATE | SECURITY | TRANSACTION |
|---|---|---|---|
| TWO | October 13, 2015 | PNY 20Nov15 45.0 C | BUY 90 |
| THREE | October 13, 2015 | PNY 18Dec15 45.0 C | BUY 90 |
| FOUR | October 13, 2015 | PNY 20Nov15 45.0 C | BUY 25 |
| FIVE | October 15, 2015 | PNY 20Nov15 45.0 C | BUY 50 |
| SIX | October 15, 2015 | PNY Stock | BUY 1000 |
| SEVEN | October 20, 2015 | PNY 20Nov15 45.0 C | BUY 45 |

All in violation of Title 18, United States Code, Sections 1348 and 2.

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in Counts One through Seven of this Bill of Indictment;

b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) and (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a) and (b).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the amount of at least $381,185.00, such amount constituting the proceeds of the violations set forth in Counts One through Seven of this Bill of Indictment.

A TRUE BILL

R. ANDREW MURRAY
UNITED STATES ATTORNEY

_____
DANIEL RYAN
GRAHAM BILLINGS
ASSISTANT UNITED STATES ATTORNEYS

5

Case 3:20-cr-00331-KDB-DCK   Document 3   Filed 09/17/20   Page 5 of 5